[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10351

_____

D.C. Docket No. 9:14-cr-80117-KLR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EDDY WILMER VAIL-BAILON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 25, 2017)

Before ED CARNES, Chief Judge, and TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.*

JULIE CARNES, Circuit Judge:

_____

* Judge Kevin C. Newsom, who joined the Court on August 4, 2017, did not participate in these en banc proceedings.

This appeal requires us to decide whether Florida felony battery is a crime of violence under the Sentencing Guidelines.  Defendant Eddy Wilmer Vail-Bailon was convicted in 2014 of illegally reentering the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(1), after having been deported following a conviction for felony battery under Florida Statute § 784.041.  Based on Vail-Bailon's felony battery conviction, the district court imposed a sentencing enhancement that applies when a defendant has been deported after committing a crime of violence as defined by the applicable Guidelines provision.  Vail-Bailon appealed his sentence, arguing that a Florida felony battery conviction does not qualify as a crime of violence.  A divided panel of this Court agreed with Vail-Bailon, and vacated his sentence.  *See United States v. Vail-Bailon*, 838 F.3d 1091 (11th Cir. 2016), *reh'g en banc granted, opinion vacated* (11th Cir. Nov. 21, 2016).  Our full Court granted the Government's petition to rehear the case *en banc*, and we now hold that Florida felony battery does categorically qualify as a crime of violence under § 2L1.2 of the Guidelines.  Thus, we affirm and reinstate Vail-Bailon's sentence.

## BACKGROUND

Vail-Bailon, a citizen of Guatemala, was deported in 2008 following his conviction for felony battery under Florida Statute § 784.041.  In 2014, Vail-Bailon was arrested in Palm Beach County, Florida and charged with illegally

2

reentering the United States after being deported following a felony conviction, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).  Vail-Bailon pled guilty to the charge.

At Vail-Bailon's sentencing, the district court imposed a 16-level enhancement pursuant to § 2L1.2 of the Sentencing Guidelines.  At the time of the sentencing, § 2L1.2 required this enhancement for a defendant previously deported after being convicted of a felony that is a crime of violence.  U.S.S.G. § 2L1.2(b)(1)(A)(ii)(2014).[1]  Over Vail-Bailon's objection, the district court concluded that felony battery as set forth in Florida Statute § 784.041 qualifies as a crime of violence under § 2L1.2, and that the enhancement thus applied to Vail-Bailon.  As enhanced, Vail-Bailon's advisory guidelines range was 37 to 46 months.  He was sentenced to 37 months.  As noted, on appeal, a divided panel of this Court agreed with Vail-Bailon that Florida felony battery under § 784.041 does not constitute a crime of violence.

---

[1]  Section 2L1.2 was amended in November 2016.  *See* U.S.S.G. § 2L1.2 (2016).  Under the amended version, the level of enhancement applicable to a defendant who previously was deported after a felony conviction depends on the length of the sentence the defendant received for the felony offense.  *Id.* § 2L1.2(b)(2).  The 2016 amendments are substantive rather than clarifying.  *See United States v. Jerchower*, 631 F.3d 1181, 1185 (11th Cir. 2011) ("An amendment that alters the text of the Guideline itself suggests a substantive change[.]").  Thus, the pre-amended version of § 2L1.2 governs our analysis in this case.  *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (instructing the sentencing court to apply the Guidelines "that . . . are in effect on the date the defendant is sentenced"); *Jerchower*, 631 F.3d at 1184 ("Substantive amendments to the Guidelines . . . are not applied retroactively on direct appeal.").

3

## STANDARD OF REVIEW AND ANALYTIC FRAMEWORK

We review *de novo* whether Vail-Bailon's felony battery conviction qualifies as a crime of violence under § 2L1.2 of the Sentencing Guidelines, and we apply a categorical approach. *United States v. Garcia-Martinez*, 845 F.3d 1126, 1129–30 (11th Cir. 2017). That is, we look at how the Florida statute defines felony battery to determine whether the offense qualifies as a crime of violence rather than looking at the particular facts underlying Vail-Bailon's conviction. *See Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." (internal quotation marks omitted)). More specifically, we assume Vail-Bailon committed felony battery by the least of the acts criminalized under the statute, and then we ask whether that act necessarily satisfies the definition of a crime of violence as set forth in § 2L1.2. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized[.]" (alterations adopted and internal quotation marks omitted)).

4

In some cases, we are able to use a modified categorical approach to determine whether a conviction qualifies as a crime of violence. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (describing the modified categorical approach and clarifying when it is applicable). The modified categorical approach only applies when a criminal statute is divisible, meaning that it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Id.* When that is the case, the modified approach allows us to examine a "limited class of documents"—known as *Shepard*[2] documents and including such items as the indictment, jury instructions, and plea agreement—"to determine what crime, with what elements, a defendant was convicted" of so that we can then assess whether the conviction satisfies the definition of a crime of violence. *Mathis*, 136 S. Ct. at 2249.

Because there are no available *Shepard* documents in this case, the modified categorical approach has no applicability here.[3] *See Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Curtis Johnson*") (applying the categorical approach where there were no *Shepard* documents to show that the defendant's conviction rested on anything more than the least of the acts criminalized by Florida's simple battery

---

[2] *Shepard v. United States*, 544 U.S. 13 (2005).

[3] The majority in the now-vacated panel opinion in this case assumed that Florida Statute § 784.041 is divisible because it can be violated either by touching or by striking. But given the lack of *Shepard* documents, the panel was unable to apply the modified categorical approach. Because we hold that Florida felony battery under § 784.041 categorically qualifies as a crime of violence, we need not reach the question whether the statute is divisible.

statute).  That means that the only question before us is whether Florida felony battery constitutes a crime of violence under the categorical approach.

## DISCUSSION

### I.    Legal Background

#### A.    Section 2L1.2

The operative version of § 2L1.2 requires a 16-level enhancement if a defendant who is convicted of illegal entry previously was deported after being convicted of a felony "crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The commentary[4] to § 2L1.2 defines the term crime of violence to include, among other qualifying crimes, a state offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  We refer to this part of § 2L1.2's definition[5] of the term crime of violence as the "elements clause."  *Garcia-Martinez*, 845 F.3d at 1129.[6]

---

[4]  The commentary "is authoritative" as to the meaning of a term used in the Guidelines "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the guideline at issue.  *United States v. Jordi*, 418 F.3d 1212, 1216 (11th Cir. 2005) (quotation omitted).  The parties agree that the commentary's definition of the term crime of violence is controlling here.

[5]  Likewise, § 4B1.2(a)(1) includes an elements clause in its definition of a crime of violence for purposes of imposing a career offender enhancement.

[6]  The commentary also includes a list of enumerated offenses that qualify as crimes of violence. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).  We refer to that list as the "enumerated offenses clause." *Garcia-Martinez*, 845 F.3d at 1129.  The enumerated offenses clause is not at issue here.

6

**B.    *Curtis Johnson***

As the basis for his challenge, Vail-Bailon argues that Florida felony battery does not require the use of "physical force." And because a statute must proscribe the use, attempted use, or threatened use of physical force before it can be said to constitute a crime of violence, Vail-Bailon contends that his felony-battery conviction therefore does not qualify.

In *Curtis Johnson v. United States*, the Supreme Court defined "physical force" for purposes of the elements clause to mean "*violent* force—that is, <u>force capable of causing physical pain or injury to another person</u>." *Curtis Johnson*, 559 U.S. at 140 (underlined emphasis added). However, in contrast with this case, which involves a felony battery conviction under Florida Statute § 784.041,[7] *Curtis Johnson* examined whether a conviction for simple battery under Florida Statute § 784.03 satisfied the elements clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i).[8] *Id.* at 136. The Florida simple battery statute is violated when a defendant "[a]ctually and intentionally touches or strikes

---

[7]  As set out *infra*, Florida felony battery under § 784.041 requires as an element of the offense that the defendant's battery cause great bodily harm, permanent disability, or permanent disfigurement to the victim.

[8]  The elements clause of the ACCA is identical to the elements clause of § 2L1.2. Cases construing the ACCA's elements clause are thus relevant to our inquiry here. *See United States v. Romo-Villalobos*, 674 F.3d 1246, 1248 (11th Cir. 2012) (noting that "cases dealing with the elements clauses of the ACCA and the career offender guidelines" are instructive in a case involving the elements clause of § 2L1.2).

7

another person against the will of the other."[9]  Fla. Stat. § 784.03(1)(a)(1).  As interpreted by the Florida Supreme Court, actual and intentional touching—the only element necessary to support a conviction for simple battery—is satisfied by any physical contact, "no matter how slight."  *State v. Hearns*, 961 So. 2d 211, 218–19 (Fla. 2007) (explaining that simple battery "may be committed with only nominal contact").  For example, even a slight but unwanted tap on the shoulder suffices for a conviction under the simple battery statute.  *See id.* at 219.  That being so, the Supreme Court concluded in *Curtis Johnson* that simple battery, as defined by Florida Statute § 784.03, does not require the use of force capable of causing physical pain or injury and thus does not categorically satisfy the elements clause.  *See Curtis Johnson*, 559 U.S. at 145.

## C.    Florida's Felony Battery Statute

Unlike the simple battery statute at issue in *Curtis Johnson*, Florida's felony battery statute requires more than a slight unwanted touch.  As defined by Florida Statute § 784.041,[10] a person commits felony battery if he:

---

[9]  The simple battery statute also can be violated by "[i]ntentionally caus[ing] bodily harm to another person."  Fla. Stat. § 784.03(1)(a)(2).  But lacking the *Shepard* documents necessary to determine the basis of the defendant's conviction—and thus unable to analyze the conviction under the modified categorical approach—the Court in *Curtis Johnson* assumed the defendant committed simple battery by actually and intentionally touching his victim, which the Court identified as the least of the acts criminalized by the simple battery statute.  *See Curtis Johnson*, 559 U.S. at 137.

[10]  Florida felony battery under § 784.041, which requires a battery that causes great bodily harm, permanent disability, or permanent disfigurement, should be distinguished from Florida

(1)(a) [a]ctually and intentionally touches or strikes another person against the will of the other; *and*

(b) [c]auses great bodily harm, permanent disability, or permanent disfigurement.

Fla. Stat. § 784.041(1) (emphasis added).  Thus, in addition to touching or striking a victim against his will, an offender must also cause the victim to suffer significant bodily harm in order to be convicted of felony battery under § 784.041. *See id.*

Florida's felony battery statute was intended to fill a gap between simple battery, which under Florida Statute § 784.03 is committed when the offender subjects his victim to any type of unwanted physical contact, and aggravated battery, which under Florida Statute § 784.045 is committed when the offender commits a battery and thereby "*intentionally or knowingly* causes great bodily harm, permanent disability, or permanent disfigurement" to his victim.  *T.S. v. State*, 965 So. 2d 1288, 1290 & n.3 (Fla. 2d D.C.A. 2007).  All three forms of battery require intentional conduct—at the very minimum a touch—that is against the will of the victim.  *See id.* at 1290 (describing the differences between Florida's simple, felony, and aggravated battery statutes).  The felony battery statute adds

---

felony battery under § 784.03(2), which punishes as a recidivist an offender who has more than one prior battery conviction, and Florida felony battery under § 784.07(2)(b), which applies to an offender who has committed simple battery against a certain kind of victim, such as a police officer.  Unless stated otherwise, we are referring to § 784.041 when we use the term "felony battery."

9

the requirement that the intentional and unwanted touch cause great bodily harm to the victim. *See id.* The aggravated battery statute in turn adds the requirement that the offender "intended to cause the enhanced level of harm or knew that this level of harm would be caused." *See id.* Aggravated battery is thus a specific intent crime, while simple battery and felony battery are crimes of general intent. *See id.*; *Lewis v. State*, 817 So. 2d 933, 934 (Fla. 4th D.C.A. 2002) (noting that Florida felony battery is a general intent crime).

## II.    Analysis

The question raised by this appeal is whether felony battery as defined by Florida Statute § 784.041 necessarily requires the use of physical force, and thus categorically qualifies as a crime of violence under the elements clause of § 2L1.2. Applying the definition of physical force articulated by the Supreme Court in *Curtis Johnson*, we readily conclude that it does.

### A.    "Physical force" for purposes of § 2L1.2's elements clause means "force capable of causing physical pain or injury."

As discussed above, the Supreme Court in *Curtis Johnson* defined the term physical force as used in the elements clause to mean: "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140. The Court arrived at that definition by looking to the ordinary meaning of the words "physical" and "force." *Id.* at 138–39. Citing numerous dictionary definitions, the Court determined that the "physical"

10

component referred to "force exerted by and through concrete bodies," as distinguished from intellectual or emotional force. *Id.* at 138.  As for the "force" component of the term, the Court noted that in general usage the word force connoted a degree of strength or power sufficient to cause pain or injury.[11]  *Id.* at 139–40.  Nevertheless, physical force "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 143.

Since *Curtis Johnson* was decided, and until the majority panel opinion in this case, there had been no debate in this Circuit about the meaning of the term physical force as used in the elements clause.  In numerous cases, we have cited *Curtis Johnson* for the proposition that physical force in this context means force that is capable of causing physical pain or injury. *See United States v. Brown*, 805 F.3d 1325, 1327 (11th Cir. 2015) ("As used in the elements clause, the phrase physical force means *violent* force—that is, force capable of causing physical pain or injury to another person." (internal quotation marks omitted)); *United States v. Hill*, 799 F.3d 1318, 1322 (11th Cir. 2015) ("The phrase physical force in the context of the statutory definition of violent felony means force capable of causing

---

[11]  The Court recognized that the word force has a specialized meaning that encompasses "even the slightest offensive touching" when it is used to define the common-law crime of battery, which was treated as a misdemeanor regardless of the manner in which it was committed. *Curtis Johnson*, 559 U.S. at 139–41.  But the Court declined to import that specialized meaning of force into the elements clause, which is intended to describe violent crimes that would not ordinarily include mere offensive touching, and which applies only to felonies rather than misdemeanors. *See id.*

11

physical pain or injury to another person." (internal quotation marks omitted));

*United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]hen

interpreting physical force in defining the analogous statutory category of violent

felonies, the Supreme Court has confirmed that the phrase physical force means

*violent* force—that is, force capable of causing physical pain or injury to another

person." (alterations adopted and internal quotation marks omitted)).

In stating and restating the above definition, we have done nothing more

than repeat the words that the Supreme Court itself used in articulating the

applicable standard.  Yet, clearly aware that the definition of physical force

articulated by the Supreme Court in *Curtis Johnson*—and cited repeatedly by this

Court—dooms the viability of his position in this case, Vail-Bailon urges us to

jettison the Supreme Court's standard in favor of an alternative definition.

Specifically, Vail-Bailon argues that we should abandon the Supreme Court's

definition of physical force as force that is "capable" of causing physical pain or

injury, and that instead we should substitute a new standard:  Physical force is

force that is "likely to cause pain."  In making this argument, Vail-Bailon relies on

the Seventh Circuit's decision in *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003)).

The defendant in *Flores* was convicted of misdemeanor battery under an Indiana

statute that criminalized "touching in a rude, insolent, or angry manner" that results

in "bodily injury."  *See Flores*, 350 F.3d at 669 (citing Ind. Code § 35-42-2-1).

12

The question before the Seventh Circuit was whether the statute required the use of physical force and thus qualified as a crime of violence under the elements clause of 18 U.S.C. § 16.[12]  *See id.* at 669–72.  Emphasizing that any contact—even indirect contact with an object such as a snowball or paper airplane—counted as a touch under the statute, and that even the slightest injury, such as a bruise, satisfied the bodily injury element, the court held that a violation of the statute did not necessarily require the use of physical force and thus did not qualify as a crime of violence.  *Id.* at 669–72.  The court ultimately defined physical force for purposes of the elements clause of § 16 to mean force that is "violent in nature—the sort that is intended to cause bodily injury, or at a minimum likely to do so."  *Id.* at 672.  And it is this "likelihood" standard that Vail-Bailon argues we should use.

A litigant asks a lot when he urges a lower court to disregard the standard articulated by the Supreme Court in favor of a contrary standard adopted by a circuit court.  Nonetheless, Vail-Bailon says we should acquiesce because in *Curtis Johnson*, immediately after stating that physical force as used in the elements clause refers to *violent* force and then articulating its "capability" test, the Supreme Court cited to the *Flores* decision.[13]  *See Curtis Johnson*, 559 U.S. at 140.

---

[12]  Similar to the elements clause of § 2L1.2, 18 U.S.C. § 16 defines the term crime of violence to mean "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).

[13]  The Court stated, "We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing

13

According to Vail-Bailon, because the Supreme Court included a pinpoint cite to page 672 of the *Flores* decision and because, among other things, the discussion on page 672 includes the articulation of a "likelihood" test, then that means the Supreme Court was signaling to the reader that it had not actually adopted the "capability" test it had just expressly announced, but instead it was incorporating a "likelihood" test that it never bothers to mention.  For several reasons, we are not persuaded.

First, we think it unlikely that the Supreme Court would engage in the verbal sleight of hand that Vail-Bailon attributes to it.  It is a safe operating assumption that when the Supreme Court articulates a standard, it actually means the words it has used to set out that standard, not words found in a cited circuit court decision.  To put it another way, if the Supreme Court in *Curtis Johnson* had intended to adopt a likelihood-based standard found in *Flores*, it would have simply said so, and not confused the reader by articulating a test that it never intended to be used. *See Rambaran v. Sec'y*, *Dep't of Corr.*, 821 F.3d 1325, 1333 (11th Cir. 2016) ("[J]ust as Congress does not generally hide elephants in mouseholes, the Supreme Court does not hide clearly established federal law in parenthetical quotations of circuit courts' decisions." (internal citation and quotation marks omitted)).  *See*

---

physical pain or injury to another person.  *See Flores v. Ashcroft*, 350 F.3d 666, 672 (C.A.7 2003) (Easterbrook, J.)." *Curtis Johnson*, 559 U.S. at 140.

*also Mathis*, 136 S. Ct. at 2254 ("[A] good rule of thumb for reading our decisions is that what they say and what they mean are one and the same[.]").  Instead, it is a more reasonable assumption that, having cited *Flores*, the Supreme Court was aware of how the Seventh Circuit had defined physical force, but the Court deliberately opted for a different definition.

We note further that the "likely to cause pain" definition proposed by Vail-Bailon does not in fact appear in *Flores*.  Indeed, to our knowledge, no court has ever defined physical force to mean force that is "likely to cause pain."  As quoted above, the court in *Flores* defined physical force to mean force that is "intended to cause bodily injury, or at a minimum likely to do so."  *Flores*, 350 F.3d at 672.  Vail-Bailon concedes that neither part of his proposed definition is consistent with *Curtis Johnson*.  That is, the Supreme Court did not identify intent to cause injury as a relevant consideration, and it spoke of force that is capable of causing "pain *or* injury" rather than just injury.  *See Curtis Johnson*, 559 U.S. at 140 (emphasis added).  These acknowledged inconsistencies further undermine Vail-Bailon's argument that we should rely on *Flores* to supplant the definition of physical force articulated by the Supreme Court in *Curtis Johnson*.

Nor would the capability-based definition of physical force articulated by the Supreme Court in *Curtis Johnson* swallow the holding of that case, as Vail-Bailon argues.  According to Vail-Bailon, even the slightest touch is always

15

capable of causing pain or injury and therefore qualifies as physical force under a capability-based definition, and yet we know from *Curtis Johnson* that slight touching alone is insufficient to establish physical force. Thus, Vail-Bailon contends, if capability of causing pain were the true standard, then the Supreme Court would have reached a different result in *Curtis Johnson.* This argument rests on a faulty premise that every slight touch is always capable of causing pain or injury. Under normal circumstances, a slight tap on the shoulder or a tickle might be offensive if it is unwanted, but it will not be capable of causing either pain or injury. Consequently, a statute requiring nothing more than a slight touch does not categorically qualify as physical force under the capability-based definition applied by *Curtis Johnson*, as opposed to a statute requiring a touch that is forceful enough to cause great bodily harm, which is what the Florida felony battery statute requires.

In short, we conclude that the test set out in *Curtis Johnson* articulates the standard we should follow in determining whether an offense calls for the use of physical force, and that test is whether the statute calls for violent force that is capable of causing physical pain or injury to another. A statute that requires a touching that causes "great bodily harm, permanent disability, or permanent disfigurement," which is what Florida felony battery requires, would certainly appear to be a statute that calls for force that is capable of causing physical pain or

16

injury. That the "touching" identified in the Florida felony battery statute actually "caused" the significant injury called for by the statute logically suggests that the force used in administering the touch was necessarily "capable" of causing that injury.

And on that point, we find agreement with the Seventh Circuit, which has recently held that a conviction under an Indiana felony battery statute that is materially indistinguishable from the Florida felony battery statute satisfies the elements clause.[14] In so holding, the Seventh Circuit rejected essentially the same challenges to the statute's eligibility as a crime of violence[15] raised by Vail-Bailon and also advocated by the majority panel opinion in support of its holding that Florida felony battery does not require the use of violent force. *See Douglas v. United States*, 858 F.3d 1069, 1071–72 (7th Cir. 2017).[16] In concluding that the Indiana felony battery statute meets the elements clause's requirement of the use of physical force, the Seventh Circuit makes it clear that the capability standard

---

[14] The Indiana statute requires (1) an intentional touch that (2) results in *serious* bodily injury. Ind. Code § 35-42-2-1(a) (2005).

[15] *Douglas* dealt with the Armed Career Criminal Act, which characterizes the prior predicate offense as a violent felony, whereas Vail-Bailon's predicate offense under the Sentencing Guidelines is called a crime of violence, but the elements clause applies equally to both a violent felony and a crime of violence, and the terms are synonymous. *See Romo-Villalobos*, 674 F.3d at 1248 (noting that the elements clause of § 2L1.2 "is the same as the elements clause[] of the Armed Career Criminal Act").

[16] The author of the *Douglas* opinion, Judge Easterbrook, was also the author of the *Flores* decision, whose citation by the Supreme Court in *Curtis Johnson* was heavily relied on by the majority panel opinion in reaching its holding. *See Vail-Bailon,* 838 F.3d at 1096, 1097.

announced in *Curtis Johnson* controls the inquiry, not the likelihood standard set out in *Flores*. *See id.* at 1071 ("The Court [in *Curtis Johnson*] stated that the sort of force that comes within the elements clause is force capable of causing physical pain or injury to another person." (internal quotation marks omitted)). In fact, the *Douglas* court never mentions a "likelihood" standard nor does it even cite to its own opinion in *Flores*, suggesting the court's recognition that, in terms of the physical force required by a statute, a simple battery statute is obviously distinguishable from a statute requiring that the battery cause serious injury. Instead, applying the plain language of *Curtis Johnson*, *Douglas* explained: "[F]orce that *actually* causes injury necessarily was capable of causing that injury and thus satisfies the federal definition." *Id.* We agree.

In short, we see no need to look any further than *Curtis Johnson* itself for the controlling definition of physical force as used in the elements clause. As articulated by the Supreme Court in *Curtis Johnson*, physical force for purposes of the elements clause means "*violent* force—that is, force capable of causing physical pain or injury." *Curtis Johnson*, 559 U.S. at 140. We now analyze under that standard the Florida felony battery statute and Florida caselaw interpreting it.

18

**B.    Florida Statute § 784.041 necessarily requires the use of force "capable of causing physical pain or injury."**

1.    Florida Caselaw

By its plain terms, felony battery in violation of Florida Statute § 784.041 requires the use of physical force as defined by *Curtis Johnson.*  To be convicted under § 784.041, an offender must intentionally use force—a touch or a strike—that is against the victim's will and that causes the victim to suffer great bodily harm.  *See* Fla. Stat. § 784.041(1).  As noted, we conclude that intentional force—even of the touching variety—that *in fact* causes "great bodily harm, permanent disability, or permanent disfigurement," as required to sustain a conviction under § 784.041, necessarily constitutes force that is *capable* of causing pain or injury.

Moreover, Florida courts have emphasized that "great bodily harm" in this context does not include "slight, trivial, minor, or moderate harm."  *E.A. v. State*, 599 So. 2d 251, 252 (Fla. 3d D.C.A. 1992) (discussing the meaning of great bodily harm as used in Florida's aggravated battery statute) (quotation omitted).  For example, "mere bruises as are likely to be inflicted in a simple assault and battery" do not satisfy the great bodily harm element.  *Id.* (quotation omitted); *see also Smith v. State*, 175 So. 3d 906, 907 (Fla. 4th D.C.A. 2015) (noting that Florida courts have defined great bodily harm to exclude slight or trivial harm); *Gordon v. State*, 126 So. 3d 292, 295 (Fla. 3d D.C.A. 2011) (finding insufficient evidence of great bodily harm where the defendant struck the victim one time with a belt,

19

causing bruises that healed without requiring medical treatment); *Nguyen v. State*, 858 So. 2d 1259, 1260 (Fla. 1st D.C.A. 2003) (finding insufficient evidence of great bodily harm where the defendant shot the victim with a stun gun, causing burn marks but no lasting ill effects).

In short, slight discomfort and minor injuries do not satisfy the great bodily harm element of § 784.041. *See E.A.*, 599 So. 2d at 252; *Smith*, 175 So. 3d at 907. Instead, that element requires that the defendant inflict a severe physical injury on the victim. *See E.A.*, 599 So. 2d at 252. In addition, Florida caselaw confirms that the statute categorically requires the use of physical force. The most relevant Florida caselaw arises in the context of the state's Prison Releasee Reoffender (PRR) and Violent Career Criminal (VCC) statutes, which provide for an enhanced sentence when a prison releasee commits, or when a defendant to be sentenced previously has been convicted of, a felony that "involves the use or threat of physical force or violence against an individual." *See* Fla. Stat. § 775.082(9)(a)(1) (defining the term "prison releasee reoffender" to include a defendant who commits a felony that involves the use or threat of physical force or violence within three years of being released from a state correctional facility); *id.* § 775.084(1)(d)(1)(a) (defining the term "violent career criminal" to include a defendant who has been convicted three times of any forcible felony); *id.* § 776.08

(defining "forcible felony" to encompass a felony that "involves the use or threat of physical force or violence").

As interpreted by the Florida courts, the physical force clause of the PRR and the VCC is materially indistinguishable from the federal elements clause. Florida courts apply a categorical approach to determine whether an offense qualifies for an enhancement under the clause, and they narrowly construe the clause to require that, similar to the federal elements clause, a qualifying offense have as a statutory element the use or threat of physical force. *See Perkins v. State*, 576 So. 2d 1310, 1313 (Fla. 1991). In addition, and consistent with the definition of physical force articulated in *Curtis Johnson*, the Florida Supreme Court has defined physical force as used in the PRR and VCC statutes to require more than mere touching. *See Hearns*, 961 So. 2d at 218–19. As the Florida Supreme Court explained in *Hearns*, "minor infractions" such as tapping a person on the shoulder without consent are "incompatible with the level of force" contemplated by the PRR and VCC statutes, and thus do not constitute physical force for purposes of those statutes. *Id.* at 219.

Since *Hearns*, and with the benefit of its reasoning, the Florida appellate courts uniformly have concluded that felony battery as defined by Florida Statute § 784.041 categorically qualifies as a predicate under the PRR and VCC statutes because it "cannot be committed without the use of physical force or violence."

21

*Dominguez v. State*, 98 So. 3d 198, 200 (Fla. 2d D.C.A. 2012); *see also Brooks v. State*, 93 So. 3d 402, 403 (Fla. 2d D.C.A. 2012) (holding that felony battery in violation of § 784.041 is a qualifying offense for PRR sentencing); *State v. Williams*, 9 So. 3d 658, 660 (Fla. 4th D.C.A. 2009) (noting that § 784.041 cannot be violated "without the use or threat of physical force or violence" (internal quotation marks omitted)).  In reaching this conclusion, the Florida courts have distinguished between simple battery under § 784.03, which requires nothing more than a slight unwanted touch, and felony battery under § 784.041, which requires a touch or strike sufficient to inflict great bodily harm.  *Compare Williams*, 9 So. 3d at 660 (clarifying that when the statutory elements of § 784.041 are satisfied, felony battery qualifies for PRR sentencing), *and Spradlin v. State*, 967 So. 2d 376, 378 (Fla. 4th D.C.A. 2007) (holding that a second offense of simple battery, which is punished as a felony but only requires nominal contact as defined by Florida Statute § 784.03, does not necessarily involve physical force and thus does not qualify for PRR sentencing).

We draw the same distinction, and reach the same conclusion.  Simple battery in violation of Florida Statute § 784.03, which is satisfied by a slight unwanted touch, does not require the use of force capable of causing pain or injury and thus does not qualify as a predicate under the federal elements clause.  On the other hand, felony battery, which includes the additional element that the touch or

22

strike *in fact* cause significant physical injury, necessarily requires the use of force *capable* of causing pain or injury and therefore does so qualify.

Vail-Bailon argues that the cited Florida caselaw is irrelevant to whether Florida felony battery qualifies as a predicate under § 2L1.2 because that question is governed by federal law. Of course, federal law rather than Florida law determines the meaning of physical force as that term is used in the federal elements clause. *See Curtis Johnson*, 559 U.S. at 138. For that reason, we apply the definition of physical force provided by the Supreme Court in *Curtis Johnson* to determine whether Florida felony battery satisfies the elements clause. Furthermore, we recognize that we are not bound by the Florida courts' interpretation of a state sentencing provision that is similar—or even identical—to the federal elements clause. *See id.* But state law does determine the elements of the underlying state statute at issue. *Id. See also Romo-Villalobos*, 674 F.3d at 1249 ("While [*Curtis*] *Johnson* proscribes us from relying on state case law to determine whether a crime requires violent force, it expressly directs us to look at state cases to determine the elements of the state offense." (internal quotation marks omitted)).

That being so, it is significant that (1) in applying a definition of physical force that is consistent with the definition set forth in *Curtis Johnson* (2) in the context of a state sentencing provision that is indistinguishable from the federal

23

elements clause, (3) Florida courts have held that felony battery in violation of Florida Statute § 784.041 "cannot be committed without the use of physical force or violence." *Dominguez*, 98 So. 3d at 200.  Likewise, given the Florida Supreme Court's guidance in *Hearns* that the PRR and VCC statutes are not intended to encompass "minor infractions" that are "incompatible" with the degree of force contemplated by those statutes, it is noteworthy that Florida appellate courts uniformly have held that Florida felony battery qualifies as a predicate offense for PRR and VCC sentencing purposes.

Alternatively, Vail-Bailon argues that we should ignore the Florida appellate cases because he thinks they reached the wrong decisions.  We disagree that the courts reached the wrong decision or that we could disregard their decisions even if we thought them wrong.  These appellate decisions are controlling as to this issue absent "some persuasive indication that the [Florida Supreme Court] would decide the issue differently."  *Hill*, 799 F.3d at 1322 (internal quotation marks omitted).  There is no such indication here.  Vail-Bailon contends that the appellate cases conflict with *Hearns*, but *Hearns* is easily distinguishable.  In *Hearns*, the Florida Supreme Court held that battery on a law enforcement officer did not necessarily involve physical force because, like simple battery, it could be accomplished by "any intentional touching, no matter how slight."  *Hearns*, 961 So. 2d at 218.  That holding is entirely consistent with *Dominguez*, *Williams*, and *Brooks* because, in

24

order to be convicted of felony battery under Florida Statute § 784.041, the defendant must touch or strike the victim in a manner that causes not just offense or slight discomfort but great bodily harm.  *See E.A.*, 599 So. 2d at 252.  Indeed, as noted, the Florida appellate courts have on this basis distinguished felony battery from simple battery for purposes of the PRR and VCC statutes.  *See Williams*, 9 So. 3d at 659–60 (distinguishing the defendant's felony battery conviction under § 784.041 from the second offense simple battery conviction at issue in *Spradlin*).

 2. The hypotheticals proffered by Vail-Bailon do not alter our conclusion.

Contrary to every Florida court that has considered the issue, Vail-Bailon argues that Florida felony battery does not categorically require the use of physical force because it is possible for an offender to violate Florida Statute § 784.041 by engaging in conduct that consists of no more than a slight touch or nominal contact.  In support of this argument, Vail-Bailon proffers the following hypotheticals:  (1) an offender lightly taps on the shoulder a victim who happens to be standing at the top of a staircase, startling the victim, who then falls down the stairs and suffers grievous injury; (2) an offender tickles a victim who is standing near an open window, startling the victim, who then hurtles through the open window and suffers severe injury; and (3) an offender applies a seemingly innocuous lotion onto the skin of a victim who has an unknown allergy, unexpectedly triggering an allergic reaction that results in serious injury.

25

According to Vail-Bailon, because the offender in each of these scenarios could conceivably be prosecuted under Florida Statute § 784.041, even though the force used by the offender is minimal, the statute therefore flunks the physical force test.  The defendant in the *Douglas* case made essentially the same arguments, and the Seventh Circuit rejected these farfetched hypotheticals, as do we.  First, there is no support in Florida law for the idea that Florida Statute § 784.041 is designed to criminalize the conduct described in the proffered hypotheticals.  *See Douglas*, 858 F.3d at 1071 (rejecting a similar "tickling" argument and noting that the defendant "ha[d] not located any decision in which Indiana's courts have convicted someone of committing [the serious bodily injury version of] felony battery after a light touch initiates a long causal chain that ends in serious injury").  To our knowledge, there is likewise no case in which tapping, tickling, or lotion-applying—or any remotely similar conduct—has been held to constitute a felony battery under Florida Statute § 784.041.  Rather, the real-world examples of Florida felony battery we are aware of all involve conduct that clearly required the use of physical force, as defined by *Curtis Johnson*.[17]  *See*, *e.g.*, *Williams*, 9 So. 3d at 659 (biting the victim with such force that the resulting

---

[17]  As did Vail-Bailon's conduct in this case.  According to the description of the underlying facts in his PSR, Vail-Bailon, after an argument with his wife, broke down her bedroom door and "choked, strangled, and punched her multiple times," repeatedly stating, "You destroyed my life," and "I will kill you."  When his wife fled to seek help, Vail-Bailon "grabbed her by the hair and dragged her back to the house" while repeatedly punching her in the head and face.

laceration required emergency medical treatment); *Lewis*, 817 So. 2d at 933 (punching the victim in the face "with a force that required stitches and left a scar"); *Harris v. State*, 111 So. 3d 922, 923–24 (Fla. 1st D.C.A. 2013) (grabbing the victim, pushing her, sitting on her chest, and strangling her with sufficient force to break her clavicle). For sure, several of these cases involve touching, but not of the tapping or tickling variety. Rather, the type of touching that has resulted in felony battery convictions is more along the lines of strangling, dragging, and biting. *See Williams*, 9 So. 3d at 659; *Harris*, 111 So. 3d at 923–24.

Nor has Vail-Bailon shown that prosecution under Florida Statute § 784.041 for the conduct described in the hypotheticals is a realistic probability. The hypotheticals involve relatively benign conduct combined with unlikely circumstances and a bizarre chain of events that result in an unforeseeable injury: the ticklee is standing at an open window, the tapped person is so startled that he careens down a flight of stairs, the recipient of the lotion has an unknown allergy (and apparently stands still long enough to allow the perpetrator to spread said lotion on his body). As discussed, felony battery differs from aggravated battery in that felony battery is a general intent crime. *See Lewis*, 817 So. 2d at 934. In other words, the prosecution is not required to prove that the defendant had the specific intent to cause the level of physical harm that the victim suffered in order to sustain a conviction for felony battery. *See id.*; *T.S.*, 965 So. 2d at 1290. But there is no

27

support in Florida law for the argument that felony battery has been applied to penalize freak accidents of the sort that Vail-Bailon concocts.

Indeed, the Supreme Court has cautioned that the need to focus on the least culpable conduct criminalized by a statute "is not an invitation to apply 'legal imagination'" to the statute. *Moncrieffe*, 133 S. Ct. at 1684–85 (noting that "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the qualifying definition of a predicate crime (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (internal quotation marks omitted))). *See also James v. United States*, 550 U.S. 192, 208 (2007) (explaining that the categorical approach does not require that "every conceivable factual offense" must qualify), *overruled on other grounds by Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015).

The hypotheticals proffered by Vail-Bailon—all of which pose highly improbable ways of inflicting severe physical injury on a victim—reflect little more than the verboten legal imagination proscribed in the above Supreme Court decisions. *Accord United States v. Redrick*, 841 F.3d 478, 484–85 (D.C. Cir. 2016) (characterizing as "farfetched" the  argument that robbery with a deadly weapon could be committed with weapons such as poison or lethal bacteria, which would not supply the requisite physical force necessary to satisfy the ACCA's elements clause); *United States v. Hill*, 832 F.3d 135, 141 (2d Cir. 2016) (rejecting the

argument that Hobbs Act robbery could be committed by putting a victim in fear of injury to his property through non-forceful means such as "threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to pour chocolate syrup on his passport" (alteration adopted and internal quotation marks omitted)).  In short, Vail-Bailon's florid exercise of legal imagination does not provide a persuasive basis upon which to conclude that Florida felony battery lacks the requirement of physical force necessary to satisfy the elements clause of § 2L1.2.

### 3.    Our conclusion is consistent with *Leocal.*

Finally, we reject Vail-Bailon's argument that a conviction under Florida Statute § 784.041 cannot satisfy the elements clause under the Supreme Court's reasoning in *Leocal v. Ashcroft*, 543 U.S. 1 (2004).  The defendant in *Leocal* was convicted of DUI causing serious bodily injury in violation of Florida Statute § 316.193(3)(c)(2).  The Supreme Court held that the conviction did not qualify as a crime of violence under the elements clause of 18 U.S.C. § 16 because the Florida DUI statute does not require that the defendant intentionally use any force at all against another person, but rather only that the defendant operate a vehicle while under the influence and thereby cause serious bodily injury to a person he accidentally, or perhaps negligently, hits with the vehicle.  *Leocal*, 543 U.S. at 7.  The Court explained that the "use" of physical force "suggests a higher degree of

29

intent than negligent or merely accidental conduct" and that, as used in a provision describing crimes of violence, the term physical force "suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses." *Id.* at 9, 11.

The Court's concern in *Leocal*—that the DUI crime at issue did not require the intentional use of any force at all, and that a defendant might be convicted of it after engaging in accidental or at most negligent conduct—is not a concern here. As *Douglas* noted in rejecting a similar *Leocal* challenge, "Indiana's statute makes intent to use force an element of the offense; that satisfies the elements clause as *Leocal* understands it." *Douglas*, 858 F.3d at 1072. Likewise, by its terms, Florida Statute § 784.041 requires an *intentional use* of force—a touch or a strike—that is against the victim's will and that causes the victim to suffer great bodily harm. Fla. Stat. § 784.041(1). And, unlike the DUI offense at issue in *Leocal*, felony battery is exactly the type of "violent, active crime[]" that the elements clause is designed to encompass. *Leocal*, 543 U.S. at 11. Accordingly, our conclusion that felony battery in violation of § 784.041 qualifies as a crime of violence under the elements clause of § 2L1.2 comports with the Supreme Court's reasoning in *Leocal*. *See Douglas*, 858 F.3d at 1072 (explaining that *Leocal* does not help a defendant who is prosecuted under a statute that "applies only to a person who

30

knowingly or intentionally touches another person in a forbidden manner" (internal quotation marks omitted)).

## CONCLUSION

For the above reasons, we hold that Vail-Bailon's conviction for felony battery in violation of Florida Statute § 784.041 qualifies as a crime of violence under the elements clause of the operative version of § 2L1.2 of the Sentencing Guidelines.  Thus, we **AFFIRM** Vail-Bailon's sentence.

WILSON, Circuit Judge, dissenting, joined by MARTIN, JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges:

If, while walking down the street, you tap a jogger on the shoulder and the tap startles him, causing him to trip, hit his head, and suffer a concussion, have you committed a violent act?  Most would say no.  But if you punch the jogger and the punch causes him to fall, hit his head, and suffer a concussion, you have undoubtedly committed a violent act.  The difference between a non-violent and violent act, then, is the degree of force used.  Both a tap and a punch are capable of causing great bodily harm, but a tap involves a limited degree of force while a punch involves a substantial degree of force.  Or, in the words of the Sentencing Guidelines, a punch involves "physical force."  *See* U.S.S.G. § 2L1.2 cmt. n.2 (2016).

The Guidelines and certain criminal statutes use the phrase "physical force" to distinguish non-violent and violent conduct.  Under § 2L1.2 of the Guidelines, for example, a crime is a "crime of violence" if it "has as an element the . . . use of physical force."  *Id.*  And interpreting "physical force" in a provision similar to § 2L1.2, the Supreme Court in *Curtis Johnson*[1] found that "physical force" refers to a certain threshold degree of force—it refers to the substantial degree of force that is associated with punching, kicking, and other violent acts.

---

[1] *Johnson v. United States*, 559 U.S. 133, 130 S. Ct. 1265 (2010) (*Curtis Johnson*).

32

This case requires us to apply *Curtis Johnson* and determine whether Florida felony battery is a crime of violence under § 2L1.2.  We must determine whether felony battery requires a degree of force that is sufficient to qualify as "physical force."  It does not.  Felony battery criminalizes a mere touching that happens to cause great bodily harm.  *See* Fla. Stat. § 784.041; *Jefferies v. State*, 849 So. 2d 401, 404 (Fla. Dist. Ct. App. 2003) ("Felony battery is . . . a species of the specific intent crime of battery . . . but with resulting and *unintended* great bodily harm." (emphasis in original)).  A mere touching is not violent—it does not involve a substantial degree of force.  A tap on a jogger's shoulder that happens to cause the jogger to suffer a concussion is still just a tap.

The Majority's decision cannot be reconciled with *Curtis Johnson*.  *Curtis Johnson* thoroughly analyzes "physical force," explaining over the course of several pages that "physical force" refers to a threshold degree of force.  But the Majority, reading this lengthy analysis out of *Curtis Johnson*, creates a new test for "physical force" that disregards degree of force.  Although the Supreme Court has cautioned against reading a statement from one of its opinions "in isolation" rather than "alongside" the rest of the opinion, the Majority does exactly that.  *See Endrew F. v. Douglas Cty. Sch. Dist.*, 580 U.S. ___, ___, 137 S. Ct. 988, 998 (2017).  The Majority announces that just one sentence in *Curtis Johnson* matters and, based on an isolated reading of the sentence, proclaims that "physical force" is

33

any force that is capable of causing pain or injury. This "capacity test" turns not on the amount of force an act involves but rather on the possible consequences of the act. Degree of force is irrelevant. Even the slightest touching involves "physical force" if the touching could cause pain or injury.

Applying its novel capacity test, the Majority concludes that Florida felony battery is a crime of violence. I cannot agree with that conclusion. The Florida legislature chose to define felony battery as a crime that can be committed by a mere touching, and a mere touching, even one that happens to cause great bodily harm, is not a violent act.

## I. *CURTIS JOHNSON*'S ANALYSIS OF PHYSICAL FORCE

Under *Curtis Johnson*, our inquiry into whether a crime requires "physical force" begins and ends with the degree of force that the crime requires. If the crime can be committed using a limited degree of force, the crime does not require "physical force." However, if "*violent* force" (i.e., "a substantial degree of force") is necessary to commit the crime, the crime requires "physical force." *See Curtis Johnson*, 559 U.S. at 140, 130 S. Ct. at 1271 (emphasis in original); *United States v. Castleman*, 572 U.S. ___, ___, 134 S. Ct. 1405, 1411 n.4 (2014) (indicating that, under *Curtis Johnson*, "physical force" refers to "a range of force . . . which constitutes 'violence' simpliciter").

The *Curtis Johnson* Court considered the meaning of "physical force" in deciding whether Florida simple battery is a "violent felony" under the Armed Career Criminal Act.[2]  Looking to dictionary definitions and the relevant statutory context, the Court "g[a]ve the phrase its ordinary meaning": "*violent* force," or rather, a "substantial degree of force."  *See Curtis Johnson*, 559 U.S. at 138–45, 130 S. Ct. at 1270–74 (emphasis in original).

The Court began its analysis of "physical force" by examining dictionary definitions of "force":

> In more general usage ["force"] means "strength or energy; active power; vigor; often an unusual degree of strength or energy," "power to affect strongly in physical relations," or "power, violence, compulsion, or constraint exerted upon a person."  [Webster's New International Dictionary 985 (2d ed. 1954)].  Black's Law Dictionary 717 (9th ed. 2009) . . . defines "force" as "power, violence, or pressure directed against a person or thing."  And it defines "physical force" as "force consisting in a physical act, esp. a violent act directed against a robbery victim."

*Id.* at 138–39, 130 S. Ct. at 1270.  Under these definitions, "force" refers to a certain degree of power, the Court recognized.  The definitions "suggest a degree of power that would not be satisfied by the merest touching."  *Id.* at 139, 130 S. Ct. at 1270.

---

[2] "Physical force" appears in the Armed Career Criminal Act's definition of "violent felony."  The phrase has the same meaning in the Guidelines and in the Armed Career Criminal Act.  *See United States v. Romo-Villalobos*, 674 F.3d 1246, 1248 (11th Cir. 2012) (per curiam).

The Court also recognized that "force" has a specialized meaning which differs from the dictionary definitions. "Force" under the common law was an element of battery that could "be satisfied by even the slightest offensive touching." *Id.* But the Court rejected that meaning in favor of the dictionary definitions, stating: "[C]ontext determines meaning . . . [and] we are interpreting the phrase 'physical force' as used in defining not the crime of battery, but rather the statutory category of 'violent felonies' . . . ." *Id.* at 139–40, 130 S. Ct. at 1270.

Embracing the definition of "force" as a degree of power, the Court next elaborated on the degree of power necessary for "physical force." According to the Court, "physical force," when used in a statutory definition of "*violent* felony," is force of such a degree that it can be considered "*violent* force." *Id.* at 140, 130 S. Ct. at 1271 (emphases in original). The Court explained:

> [I]n the context of a statutory definition of "*violent* felony," the phrase "physical force" means *violent* force—that is, force capable of causing physical pain or injury to another person. *See Flores v. Ashcroft,* 350 F.3d 666, 672 (C.A.7 2003) (Easterbrook, J.). Even by itself, the word "violent" . . . connotes a substantial degree of force. Webster's Second 2846 (defining "violent" as "[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement"); 19 Oxford English Dictionary 656 (2d ed. 1989) ("characterized by the exertion of great physical force or strength"); Black's 1706 ("of, relating to, or characterized by strong physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of strong "physical force" is even clearer.

36

> *See id.*, at 1188 (defining "violent felony" as "a crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon"); *see also United States v. Doe,* 960 F.2d 221, 225 (C.A.1 1992) (Breyer, C.J.) ("The term to be defined, 'violent felony,' calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.").

*Id.* at 140–41, 130 S. Ct. at 1271. "Physical force," in other words, is a unique type of force; it is powerful, violent force.

The Court then concluded its thorough discussion of "physical force" by further underscoring that "physical force" refers to a powerful amount of force. The Court expressly rejected an argument that "physical force" does not require a certain threshold degree of force: "[Although] there is no modifier in [the Armed Career Criminal Act] that specifies the degree of 'physical force' required[,] . . . the term 'physical force' itself normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony.'" *Id.* at 142, 130 S. Ct. at 1272.

*Curtis Johnson* thus requires our court, when determining whether a crime necessarily involves "physical force," to analyze the degree of force used to commit the crime. If the crime requires a "substantial degree of force"—the type of strong physical power that is generally "capable of causing physical pain or injury" upon impact—the crime requires "physical force." *See id.* at 140–41, 130 S. Ct. at 1271. This standard makes identifying the actions that involve "physical

37

force" simple.  Touching, tapping, pinching, and other actions involving limited, non-violent contact do not constitute "physical force."  But kicking, striking, punching, and other actions that are associated with violence do constitute "physical force."

Indeed, since *Curtis Johnson* was decided in 2010, our court, without difficulty, has adhered to the Supreme Court's finding that degree of force is the gravamen of the physical-force inquiry.  In *United States v. Owens*, for example, we considered whether the Alabama offenses of second-degree rape and second-degree sodomy require "physical force."  672 F.3d 966, 970–72 (11th Cir. 2012).  And we held that those offenses do not necessarily involve "physical force" because they "require[] only slight penetration" and thus "do[] not require, as an element, strong physical force or a substantial degree of force."  *Id.* at 971 (citing *Curtis Johnson*).

In this case, then, we must consider the degree of force that Florida felony battery requires.

## II. APPLYING *CURTIS JOHNSON* TO FLORIDA FELONY BATTERY

Under *Curtis Johnson*, Florida felony battery is not a physical-force crime.  It does not require a degree of force that is sufficient to constitute "physical force."  *Curtis Johnson*'s analysis of Florida simple battery is dispositive.  The degree of force required by simple battery, *Curtis Johnson* held, is insufficient to constitute

"physical force." And felony battery can be committed using the exact same insufficient degree of force as simple battery.

*Curtis Johnson* concluded that Florida simple battery does not require "physical force" because one of the physical acts that can support a simple battery conviction—intentional touching—involves an insufficient degree of force. *See Curtis Johnson*, 520 U.S. at 138–39, 145, 130 S. Ct. at 1269–70, 1274; *United States v. Braun*, 801 F.3d 1301, 1307 (11th Cir. 2015) ("The Supreme Court . . . made clear [in *Curtis Johnson*] that 'physical force' . . . requires violent contact beyond a mere touching."). Under Florida law, an intentional touching is a mere touching. *Curtis Johnson*, 520 U.S. at 138, 130 S. Ct. at 1270. It covers "nominal contact" like "a tap on the shoulder"—conduct that involves a limited amount of power. *Id.* (internal quotation marks omitted).

An intentional touching can also give rise to a Florida felony battery conviction. The actus reus elements of felony and simple battery are identical. Both crimes have as an element the "[a]ctual[] and intentional[] touch[ing] or strik[ing] [of] another person." *See* Fla. Stat. § 784.03(1)(a) (simple battery); Fla. Stat. § 784.041(1) (felony battery). The only difference between the crimes is that

39

felony battery is limited to instances when the touching happens to result in great bodily harm. *See Jefferies*, 849 So. 2d at 404.[3]

Hence, the exact same non-violent physical act—an intentional touching—can serve as the basis of both felony battery and simple battery. Because *Curtis Johnson* held that such an act does not involve "physical force," felony battery does not require "physical force."

The Majority, however, believes that under *Curtis Johnson* the result element (the causes-great-bodily-harm element) of felony battery distinguishes felony battery from simple battery and renders it a physical-force crime. I disagree. The result element is not relevant under *Curtis Johnson* because the element has no bearing on the degree of force necessary to commit felony battery. The degree of force associated with a touching is not somehow altered because the touching happens to result in great bodily harm. *Cf. Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003) ("[A crime] requiring proof of physical injury, does not [necessarily] require, as an element of the offense, that the defendant *use*

---

[3] Extrapolating from a series of Florida decisions discussing Florida's own definition of "physical force," the Majority suggests that Florida felony battery requires more force than simple battery. But *Jefferies* and other Florida precedent undercut that suggestion. Under those precedents, felony battery is just a simple battery that happens to cause great bodily harm. *See Jefferies*, 849 So. 2d at 404 ("Felony battery is . . . a species of the specific intent crime of battery . . . but with resulting and *unintended* great bodily harm." (emphasis in original)); *T.S. v. State*, 965 So. 2d 1288, 1290 (Fla. Dist. Ct. App. 2007) ("The definition of felony battery recites the first prong of the [simple] battery definition and adds the element of causing great bodily harm, permanent disability, or permanent disfigurement."); *id.* (indicating that felony battery is "simple battery plus . . . causing great bodily harm"). Since simple-battery conduct underlies a felony battery, felony battery involves the same force as simple battery.

40

physical force to inflict that injury." (emphasis in original) (internal quotation marks omitted)). If, for instance, a student shoots a spitball at a classmate, the student commits a touching under Florida law. *See State v. Hearns*, 961 So. 2d 211, 218–19 (Fla. 2007). That touching involves the same limited degree of force regardless of whether it results in great bodily harm. The spitball could hit the classmate in his eye and cause a serious eye injury, or the spitball could hit the classmate in his eye while his eyelid is closed and cause no injury. Although these results differ, the degree of force used is constant. A spitball that happens to cause great bodily harm is still just a spitball. A mere touching that happens to cause great bodily harm is still just a mere touching.[4]

### III. THE MAJORITY'S CAPACITY TEST CANNOT BE RECONCILED WITH *CURTIS JOHNSON*.

The Majority concludes that Florida felony battery is a physical-force crime because it misapplies *Curtis Johnson*; it relies on a test for "physical force" that

---

[4] The Majority contends that Florida felony battery does not cover mere touchings that cause great bodily harm. A mere touching can cause great bodily harm only when there are "bizarre" circumstances, the Majority says, and there is no reasonable probability that Florida would apply the felony battery statute to that type of conduct. I find this argument unconvincing. First, the Majority's premise that a mere touching can cause great bodily harm only under "bizarre" circumstances is problematic. An unwanted touch causing a jogger to trip and suffer a concussion or ankle injury, for example, is not a bizarre circumstance. Second, the felony battery statute specifically refers to "touch[ing]" that "[c]auses great bodily harm," Fla. Stat. § 784.041(1), and Florida courts have defined "touching" in the battery context to refer to a mere touching, *see Curtis Johnson*, 520 U.S. at 138, 130 S. Ct. at 1269–70. Felony battery's "statutory language itself" therefore creates a "realistic probability that [Florida] would apply [the] statute to" a mere touching that happens to cause great bodily harm. *Ramos v. Att'y Gen.*, 709 F.3d 1066, 1071–72 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007)). The Florida legislature would not have included a mere touching as an operative act in felony battery if the legislature did not intend to punish some mere touchings.

41

cannot be reconciled with *Curtis Johnson*. In finding that the result element of felony battery distinguishes felony battery from simple battery, the Majority applies a capacity test for "physical force." Under the test, the possible result of an act, not the degree of force associated with the act, is dispositive.

The Majority derives its capacity test from a single sentence in *Curtis Johnson*: "[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."[5] *Curtis Johnson*, 130 U.S. at 140, 130 S. Ct. at 1271 (emphasis in original). To the Majority, the word "capable" in that sentence is dispositive, establishing a capacity-based definition of "physical force."

This reading of *Curtis Johnson* does not pass muster. The Supreme Court chose to devote several pages to explaining the meaning of "physical force." *See id.* at 138–145, 130 S. Ct. at 1270–74. But the Majority reads that robust analysis out of *Curtis Johnson* by plucking one sentence from the opinion and then interpreting the sentence in isolation. The Majority decides that only the "*violent* force" sentence matters—the rest of the Supreme Court's discussion of "physical force" is superfluous. And reading the "*violent* force" sentence in isolation, the Majority concludes, based on a single word in the sentence, that the sentence sets forth a capacity test.

---

[5] I refer to this sentence as the "*violent* force" sentence.

42

The Supreme Court recently cautioned against reading its opinions in this way—that is, reading selected statements "in isolation."[6] *See Endrew F.*, 137 S. Ct. at 998.  But because the Majority fails to heed the Court's warning, the Majority misreads *Curtis Johnson*, adopting a novel test that cannot be reconciled with *Curtis Johnson*.  When we honor the *Curtis Johnson* Court's decision to conduct a robust analysis of "physical force" and we consider the full analysis, the "*violent* force" sentence cannot be read as establishing a capacity test.  Furthermore, the Majority's capacity test is inconsistent with *Curtis Johnson*'s central holding; it swallows *Curtis Johnson*'s finding that Florida simple battery does not require "physical force."

## A. The "*violent* force" sentence does not establish a capacity test.

When the "*violent* force" sentence is read "alongside" the rest of *Curtis Johnson*, *see id.*, the sentence confirms that degree of force is dispositive as to whether a crime requires "physical force."  Again, the sentence reads:  "[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Curtis Johnson*, 130 U.S. at 140, 130 S. Ct. at 1271 (emphasis in original).  This statement, when read in context,

---

[6] Similarly, Justice Scalia, who authored *Curtis Johnson*, expressed disapproval of reading Supreme Court opinions through such a selective lens.  *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. ___, ___, 133 S. Ct. 2247, 2256 n.5 (2013) (Scalia, J.) (criticizing the dissenting opinion for "cherry-pick[ing] some language from a sentence in" a previous Supreme Court opinion).

underscores that "physical force" refers to a substantial degree of force. It does not declare that all contact that is capable of causing pain or injury is "physical force."

The "*violent* force" sentence is found in the middle of *Curtis Johnson*'s analysis of "physical force," and the language in the sentence derives meaning from that analysis. The sentence appears shortly after *Curtis Johnson* states that "physical force" refers to a "degree of power," and it is followed directly by *Curtis Johnson*'s conclusion that the word "'violent' . . . connotes a substantial degree of force." *See id.* at 138–41, 130 S. Ct. at 1270–71. Thus, by equating "physical force" with "*violent* force," the first clause of the sentence affirms that "physical force" refers to a substantial degree of force or power. The second clause of the sentence, the clause referencing "capable," elaborates on that point, underscoring that "*violent* force" is associated with strength and power. The clause notes that "*violent* force" is the type of powerful action that typically causes pain or injury upon impact: "[T]he phrase 'physical force' means *violent* force [read *a substantial degree of force*]—that is, force [read *a degree of power*] capable of causing physical pain or injury to another person." *See id.* at 140, 130 S. Ct. at 1271 (emphases in original).

And even if we ignore the language surrounding the "*violent* force" sentence, the Majority's reading of the sentence is problematic. The Majority's reading cannot be squared with the language in the sentence itself. Interpreting the

44

sentence to mean that all contact capable of causing pain or injury involves "physical force," the Majority reads the phrase "*violent* force" out of the sentence. The phrase "*violent* force" qualifies the clause "force capable of causing physical pain or injury," so the conduct discussed by that clause is limited to conduct associated with violence. Yet under the Majority's reading, the clause includes non-violent conduct. Many forms of non-violent conduct have the capacity to cause pain or injury; pinching and tapping, for example, both can at the very least result in a person suffering pain.

The Supreme Court took the time to pen a thorough discussion of "physical force" in *Curtis Johnson*. We should take that entire discussion into account. When we do, it is apparent that the "*violent* force" sentence does not discard degree of force for a capacity test.

## B. The Majority's capacity test swallows *Curtis Johnson*'s central holding.

Confirming that the Majority's capacity test cannot be reconciled with *Curtis Johnson*, the test "runs headlong into" *Curtis Johnson*'s central holding. *See Endrew F.*, 137 S. Ct. at 998. *Curtis Johnson* held that Florida simple battery does not require "physical force," but the Majority's capacity test leads to the opposite conclusion.

Florida simple battery, *Curtis Johnson* found, does not require "physical force" because the mere touching that it criminalizes, such as "a tap on the

45

shoulder without consent," does not involve "physical force."  *See Curtis Johnson*,

559 U.S. at 138, 145, 130 S. Ct. at 1270, 1274 (internal quotation marks omitted).

But when "physical force" is defined as any contact that is capable of causing pain

or injury, a mere touching *does* constitute "physical force."  Any unwanted

touching could cause pain or injury.  A tap on a pedestrian's shoulder could

distract the pedestrian causing her to collide with another person and suffer injury.

A student's spitball could hit its victim in the eye causing injury.  A pat on the

back could startle the victim causing her to jerk her body and suffer pain.  A

child's innocent pinching of his friend could cause the friend to experience a sharp

pain.

The Supreme Court in *Curtis Johnson* did not, in one breath, hold that

Florida simple battery does not require "physical force" and, in the next breath, set

forth a test that dictates the opposite conclusion.  The Majority's capacity test

cannot be reconciled with *Curtis Johnson*; the test swallows the holding of *Curtis

Johnson*.

## IV. CONCLUSION

When we comply with *Curtis Johnson* and use degree of force to determine

whether Florida felony battery requires "physical force," this case is

straightforward.  Felony battery can be committed by a mere touching, and *Curtis

Johnson* told us that a mere touching does not require a degree of force that is

46

sufficient to qualify as "physical force."  A crime that can be committed by a mere

touching is not a crime of violence.

I respectfully dissent.

ROSENBAUM, Circuit Judge, joined as to Section II by MARTIN, Circuit Judge, and joined as to Sections II.A., II.B.1., and II.B.2.a by JORDAN, Circuit Judge, dissenting:

No question about it: a crime called "felony battery" sure sounds like a violent crime. But sometimes intuition can be wrong. *See Samuel Johnson v. United States*, 135 S. Ct. 2551, 2560 (2015) (suggesting that Connecticut's offense of "rioting at a correctional institution," a crime that "certainly sounds like a violent felony," may not, in fact, have qualified as a violent felony under the now-invalidated residual clause of the Armed Career Criminal Act ("ACCA")).[1] So we evaluate whether a crime qualifies as a crime of violence under the federal definition of that term of art by conducting legal analysis and applying Supreme Court precedent.

This case raises the question of whether Florida felony battery always and necessarily involves the "use . . . of physical force against the person of another," under the federal definition of "crime of violence" as used in the U.S. Sentencing Guidelines Manual ("U.S.S.G."). *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (U.S. Sentencing Comm'n 2014). The Supreme Court has given us clear guidance for finding the answer to this question. And following it leads to a single answer:

---

[1] The Supreme Court's comments arose in the context of considering the residual clause of the ACCA's definition of "violent felony." But the principle that we cannot determine whether a crime should be a violent felony simply by considering its name remains the same, whether we are discussing the residual clause or the elements clause of the ACCA's definition of "violent felony," or, as here, the elements clause of the U.S. Sentencing Guidelines Manual § 2L1.2's definition of "crime of violence."

Florida felony battery does not satisfy the federal definition for a "crime of violence," despite what intuition might otherwise tell us.

As relevant here, a crime is a "crime of violence" if it "has as an element the use . . . of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  Florida felony battery has two elements we must examine.  In *Curtis Johnson v. United States*, 559 U.S. 133, 138-143 (2010), the Supreme Court already told us that the first one does not satisfy the elements clause.  And a trio of Supreme Court cases—*Leocal v. Ashcroft*, 543 U.S. 1 (2004), *United States v. Castleman*, 134 S. Ct. 1405 (2014), and *Voisine v. United States*, 136 S. Ct. 2272 (2016)—just as surely demands the conclusion that the second doesn't, either.

The Majority Opinion reaches the opposite conclusion by attributing to *Curtis Johnson* a rule that the Supreme Court has expressly told us it did not establish and by ignoring Supreme Court precedent.  We cannot do that.  Because Supreme Court precedent requires the conclusion that felony battery, when committed by mere touch, does not contain an element involving "the use . . . of physical force against the person of another," I respectfully dissent.

**I.    Supreme Court precedent requires the conclusion that Florida felony battery does not contain an element involving "the use . . . of physical force against the person of another."**

Two elements comprise Florida felony battery:  a person must (1) "[a]ctually and intentionally touch[] or strike[] another person against the will of the other;"

and (2) "[c]ause[] great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041(1). The Supreme Court has lit the way for us to determine whether either of these elements qualifies as one involving "the use . . . of physical force against the person of another" ("elements clause"). U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Concerning the first element, the Supreme Court already held that it fails to satisfy the "physical force" requirement of the elements clause when the crime is committed by mere touch. In *Curtis Johnson*, 559 U.S. 133, the Supreme Court considered whether Florida simple battery, a crime that consists of the exact same element, word-for-word, as the first element of Florida felony battery, necessarily and always must involve "the use . . . of physical force against the person of another." It held that it need not. We are bound by that ruling.[2]

As to the second element—the causation of "great bodily harm, permanent disability, or permanent disfigurement"—three other Supreme Court cases dictate that that element cannot satisfy the "use" requirement of the elements clause where, as here, the statute does not require any kind of intent at all to cause harm.

---

[2] Judge Wilson fully explains the basis for that ruling, so I do not repeat it here.

50

*Leocal*, *Castleman*, and *Voisine* provide important guidance on the meaning of "use" in the elements clause.[3]  They lead to the conclusion that where the crime has no element requiring intent to injure or to engage in an act that has a substantial likelihood of harming another, any harm that results from the prohibited conduct cannot, in and of itself, satisfy the elements clause.

In *Leocal*, the Supreme Court considered whether the Florida crime of driving under the influence of alcohol ("DUI") and causing serious bodily injury, in violation of Fla. Stat. § 316.193(3)(c)(2), satisfied the definition of "crime of violence" under, among other things, 18 U.S.C. § 16's "elements clause."[4]  The Court characterized the issue in *Leocal* as concerning "whether state DUI offenses . . . which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence."  543 U.S. at 6.

As the Court saw it, the key consideration under the "elements clause" concerned the requirement that a crime of violence be one involving the "use . . . of physical force against the person or property of another."  *Id.* at 9 (emphasis omitted).  And that phrase, the Court reasoned, "most naturally suggests a higher

---

[3] *Leocal* suggests that its analysis does not construe the word "use," but *Castleman* and *Voisine* treat it as part of the line of cases interpreting the meaning of that word in the elements clause.

[4] The Supreme Court recognized in *Curtis Johnson*, 559 U.S. at 140, that § 16's "elements clause" is materially indistinguishable from ACCA's "elements clause."  And ACCA's "elements clause," in turn, is materially indistinguishable from § 2L1.2's "elements clause."

degree of intent than negligent or merely accidental conduct." *Id.* (citation omitted). So the Court held that DUI—even DUI involving negligence—does not satisfy the "elements clause." *Id.* at 9-10. Significantly, the Court reached this conclusion despite the fact that, like Florida felony battery, the Florida DUI statute had as an element the requirement that "serious bodily injury" have occurred as a result of the DUI. So *Leocal* suggests that an element that requires only grievous bodily injury or even death cannot satisfy the elements clause.

Ten years later, the Supreme Court revisited *Leocal* in *Castleman*. *Castleman* described *Leocal* as having held that "'use' requires active employment," and "'use' of force must entail 'a higher degree of intent than negligent or merely accidental conduct.'" *Castleman*, 134 S. Ct. at 1414 n.8 (quoting *Leocal*, 543 U.S. at 9) & 1415 (quoting *Leocal*, 543 U.S. at 9). Though the Court found that "intentionally or knowingly caus[ing] bodily injury to" another required the "use" of physical force, it expressly left open the question of whether "the merely reckless causation of bodily injury" may be a "use" of force under the similar definition of "misdemeanor crime of domestic violence." *Id.* at 1414.

We did not have to wait too long to learn the answer to that question. Two years later, in *Voisine*, the Supreme Court held that a reckless domestic assault involves the "use" of physical force under the definition of "misdemeanor crime of

52

domestic violence." 136 S. Ct. 2272. In reaching this determination, the Court rested on the definition of "use," which it described as "the act of employing something." *Id.* at 2278 (citations and quotation marks omitted). Based on this definition, the Court observed that the word "use" "does not demand that the person applying force have the purpose or practical certainty that it will cause harm," but "use" does anticipate the "understanding that it is substantially likely to do so."[5] *Id.* at 2279.

We must apply the lessons of the *Leocal*/*Castleman*/*Voisine* trilogy when we consider whether the second element of felony battery—the causation of "great

---

[5] *Castleman* and *Voisine* addressed the meaning of "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). 134 S. Ct. at 1408. As with the words "crime of violence" in U.S.S.G. § 2L1.2, the definition of "misdemeanor crime of domestic violence" under § 922(g)(9) requires, in relevant part, an element that involves "the use . . . of physical force . . . ." 18 U.S.C. § 921(g)(33)(A)(ii). So the cases addressing the federal definition of felony "crime of violence" can be instructive in construing the meaning of "misdemeanor crime of domestic violence," and vice-versa. *See*, *e.g.*, *Castleman*, 134 S. Ct. at 1415 (citing *Leocal* in discussing what constitutes a "use" of force). Nevertheless, some differences between the analyses exist: (1) "misdemeanor crime of violence" is governed by the common-law concept of "force," *see Castleman*, 134 S. Ct. at 1414-15, whereas the federal definition of "crime of violence" that appears in the ACCA and the Sentencing Guidelines is not, *see Curtis Johnson*, 559 U.S. at 139-40. That fact goes only to the meaning of "physical force" in both definitions, in that the common-law definition of "physical force" is broader and covers more conduct than does the definition of "physical force" within the federal definition of "crime of violence"; and (2) though the Supreme Court has held that a reckless act that results in harm to another entails a "use" of physical force under the definition of "misdemeanor crime of domestic violence," it has reserved the issue of whether the same is true under the federal definition of "crime of violence," as set forth at 18 U.S.C. § 16. *See Voisine*, 136 S. Ct. at 2279-80 & 2280 n.4. But there is no reason to believe that the Supreme Court would find that anything less than recklessness would satisfy the elements clause of the federal definition of "crime of violence." Indeed, the Supreme Court noted in *Castleman* that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient." *Castleman*, 134 S. Ct. at 1414 n.8. So while the definition of "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) cannot tell us how narrow the definition of "the use . . . of physical force" is under the federal definition of a felony "crime of violence," it can and does inform us about the broadest the meaning of the phrase can be.

bodily harm, permanent disability, or permanent disfigurement"—requires the "use" of physical force. Since we know from this line of cases that an accident does not involve the "use . . . of physical force" within the definition of "crime of violence," we must consider whether felony battery can occur when the actor neither knows nor should know that his act is "substantially likely," *Voisine*, 136 S. Ct. at 2279, to cause grievous bodily harm.

The answer to that question is clear. In *T.S. v. State*, 965 So. 2d 1288, 1290-91 (Fla. 2d Dist. Ct. App. 2007), the court held that felony battery includes no element requiring that the perpetrator intended to harm another or knew harm would result. *See also Jefferies v. State*, 849 So. 2d 401, 404 (Fla. 2d Dist. Ct. App. 2003) ("Felony battery is clearly a species of the specific intent crime of battery . . . , but with resulting and *unintended* great bodily harm"), *receded from on other grounds by Hall v. State*, 951 So. 2d 91 (Fla. 2d Dist. Ct. App. 2007). Because a person need not intend—or even have reason to expect—that his act will cause great bodily harm, *see Voisine*, 136 S. Ct. at 2279, in order to commit felony battery, the second element of felony battery fails the "use" requirement of the federal definition of "crime of violence."

The Majority Opinion disagrees. To support its position, it contends that *Leocal* requires only an intent to touch, not an intent to harm.

54

To be sure, in a vacuum, one conceivable reading of *Leocal* is that it requires only an intent to touch, not an intent to harm. But *Leocal* is not the last word on the meaning of "use." And the Supreme Court has since explained that that word anticipates that the person applying force have the "understanding that [doing so] is substantially likely to [cause harm]." *Id.* So when a person has no reason to believe that harm is substantially likely to result from his mere touch of another, under *Voisine*, he cannot be said to have "use[d]" physical force in the sense that the federal definition of "crime of violence" requires.[6]

In short, Supreme Court precedent demands the conclusion that Florida felony battery, when committed by mere touch, does not constitute a "crime of violence."

## II. The Majority Opinion's reasons for resisting the conclusion dictated by Supreme Court precedent do not hold up to scrutiny.

The Majority Opinion pursues two overriding lines of attack to fight the Supreme-Court-precedent-dictated conclusion that Florida felony battery does not qualify as a "crime of violence." Neither withstands scrutiny.

### A.

---

[6] Aside from being the law under binding Supreme Court precedent, this makes perfect sense. Notice considerations dictate that the inquiry into whether a crime qualifies as a "crime of violence" under the "elements clause" should be forward-looking, from the perspective of the wrongdoer, not Monday-morning quarterbacking in hindsight. That way, when a person is held responsible for committing a "crime of violence," that person either intended to commit a "crime of violence" or should have known before committing the act that resulted in the conviction that it was at least likely that his act would cause bodily harm.

55

First, the Majority Opinion plucks a single sentence out of the Supreme Court's six-page discussion in *Curtis Johnson*, 559 U.S. at 138-143, about the meaning of the words "physical force." Then, looking solely to this sentence and ignoring the rest of the Supreme Court's discussion, the Majority Opinion formulates what it calls the "capability test." Under that test, a crime contains an element that requires the "use . . . of physical force" if, regardless of its nature, the contact called for by the statute's elements happens to actually result in "physical pain or injury to another person," Maj. Op. at 10-18 (quoting *Curtis Johnson*, 559 U.S. at 140) (internal quotation marks omitted). For good measure, the Majority Opinion asserts that *Curtis Johnson* requires this "capability test."[7] *Id*. at 17 ("the capability standard announced in *Curtis Johnson* controls the inquiry").

Not so.

---

[7] And going even further, the Majority Opinion suggests that we have always used the "capability test" since the Supreme Court issued *Curtis Johnson*. Maj. Op. at 11. That is simply not accurate. True, we have quoted the same sentence from *Curtis Johnson* that the Majority Opinion relies on in isolation, but we have not previously concluded that the mere fact that an act results in bodily pain or harm necessarily means that the act employed "physical force." To the contrary, in *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012), which the Majority Opinion cites as support for the notion that we have always employed the "capability test," we were careful to put the quoted sentence from *Curtis Johnson* into context, noting that "[t]he ordinary meaning of the phrase 'physical force' suggests a category of violent, active crimes . . . ." (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (quotation marks omitted), and that "the term 'physical force itself normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony,'" (quoting *Curtis Johnson*, 130 S. Ct. at 1272). As for the other two cases the Majority Opinion cites— *United States v. Brown*, 805 F.3d 1325, 1327 (11th Cir. 2015), and *United States v. Hill*, 799 F.3d 1318, 1322 (11th Cir. 2015), both analyzed crimes that by their terms required the use of violence, so there was no need to apply a "capability test," and, in fact, we did not do so.

Indeed, the Supreme Court itself expressly confirmed as much four years after it issued *Curtis Johnson*,[8] when it released *Castleman*, 134 S. Ct. 1405. In *Castleman*, the Supreme Court determined that the misdemeanor offense of having "intentionally or knowingly cause[d] bodily injury to" a domestic relation constitutes "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). *Id.* at 1408. As with the words "crime of violence" in U.S.S.G. § 2L1.2, the definition of "misdemeanor crime of domestic violence" under § 922(g)(9) requires, in relevant part, an element that involves "the use . . . of physical force . . . ." 18 U.S.C. § 921(g)(33)(A)(ii).

Construing the words "physical force" in § 921(g)(33)(A)(ii), Justice Scalia concurred specially because he reasoned that under *Curtis Johnson*, "it is impossible to cause bodily injury without using force 'capable of' producing that result." *Castleman*, 134 S. Ct. at 1416-17 (Scalia, J., concurring). In other words, he applied the same "capability test" that the Majority Opinion urges binds us here.

The Supreme Court disagreed that *Curtis Johnson* had created any such test. It noted that Justice Scalia's concurrence "suggests that [even the most minor "cut[s], abrasion[s] [or] bruise[s]"] necessitate violent force, under [*Curtis*] *Johnson*'s definition of that phrase" because they actually result in "bodily injury."

---

[8] Judge Wilson has already explained why *Curtis Johnson* itself did not create a "capability test" but rather construed the phrase "physical force" to refer to "substantial" and "violent" force—the kind involved in "violent" felonies.

57

*Id.* at 1414 (citing *id.* at 1417).  And then the Court expressly rejected the idea that it had previously adopted such a standard.  *Id.*

Instead, the Court confirmed, as of the issuance of *Castleman*, that question remained undecided.  *Id.*  Nor does anything indicate that the Supreme Court has since adopted the "capability test."  So it is beyond all dispute that the Majority Opinion's "capability test" is not, in fact, Supreme Court law.  And the Majority Opinion's insistence to the contrary is simply incorrect.

**B.**

But that is not the only problem with the Majority Opinion's analysis.  The Majority Opinion independently reasons that Florida felony battery necessarily requires the use of "physical force" as anticipated by § 2L1.2's definition of "crime of violence" because, it posits, felony battery cannot be committed by mere touch.  *See* Maj. Op. at 21-29.  To reach this conclusion, the Majority opinion takes two different tacks:  (1) it ridicules the idea that felony battery could occur by mere touch and that the state would prosecute felony battery where the conduct involved only a mere touch; and (2) it relies on Florida intermediate-appellate law to support the notion that the second element of felony battery—the infliction of grievous bodily injury—necessarily precludes the possibility that felony battery may be committed by mere touch.  *See* Maj. Op. at 21-22.  Each fails under examination.

**1.**

First, the Majority Opinion suggests that, as a matter of fact, grievous bodily injury cannot occur as the result of a mere touching, except in the case of a highly improbable "freak accident[]," so it is practically impossible to commit felony battery by mere touch.  Maj. Op. at 27; *see also id.* at 8 ("Unlike the simple battery statute at issue in *Curtis Johnson*, Florida's felony battery statute requires more than a slight unwanted touch.").  Judge Wilson explains why this is incorrect. *See* Wilson Dissent at 10 n.4.

I add that everyday experience tells us an unexpected touch can result in a start that causes a person to jerk involuntarily and sometimes, consequently, to injure himself.  Indeed, some people tap or tickle another just to see their involuntary reactions, though they no doubt think at the time that they are engaging in harmless pranks.  So conceiving of how a person could commit felony battery by mere touch does not demand factual imagination.

Nor, as the Majority Opinion asserts, does considering how a mere touch could result in grievous injury require "legal imagination."  *See* Maj. Op. at 27-28 (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013)).  As we have explained, a petitioner does not engage in "legal imagination" "when the *statutory language itself* . . . creates the 'realistic probability' that a state would apply the statute" to the identified least culpable conduct," regardless of whether it actually

59

has done so.  *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1071-72 (11th Cir. 2013) (emphasis added).

The language of the felony-battery statute unquestionably crosses this threshold.  We know that, by its language, the first element applies to mere touching.  *State v. Hearns*, 961 So. 2d 211 (Fla. 2007); *Curtis Johnson*, 559 U.S. 133.  We also know that the second element applies when grievous injury results from mere touching.  And finally, we know that Florida has construed § 784.041 to lack any requirement concerning intent to harm.  So the terms of the felony-battery statute itself make it plain beyond all doubt that mere touching that accidentally results in serious bodily injury squarely satisfies the statute's requirements. Indeed, the government conceded as much at oral argument.[9]  For this reason, despite the Majority Opinion's reassurance that, "to [its] knowledge, there is . . . no case in which [mere touching that accidentally resulted in serious bodily injury]

---

[9] The government tried to avoid the consequences of its concession by arguing that proximate-causation principles might prevent Florida from using the felony-battery statute to prosecute this type of conduct.  But it also eventually conceded at oral argument that it is, at best, "not clear" whether proximate-causation requirements limit the application of Florida's felony-battery statute.  And neither the government nor we could find any cases where a Florida court appeared to have applied proximate-causation principles to felony battery.  Plus even if Florida were to apply proximate-causation principles to felony battery, whether that would preclude prosecution of all mere touching that accidentally results in grievous injury is likewise unclear.  Under these circumstances, and where the conduct at issue unambiguously falls within the bounds of the statute as written, we must presume that proximate-causation principles do not apply and conclude that mere touching that accidentally results in grave injury is the least culpable conduct that may be prosecuted under Florida's felony-battery statute.

60

has been held to constitute a felony battery under Florida Statute § 784.041,"[10] whether Florida has actually prosecuted such a case is entirely irrelevant to the analysis. *See Ramos*, 709 F.3d at 1071-72.

Contrary to the Majority Opinion's suggestion, *see* Maj. Op. at 27 ("there is no support in Florida law for the idea that Florida Statute § 784.041 is designed to criminalize the conduct described in the proffered hypotheticals"), the enacting legislators' supposed intentions in designing Florida's felony-battery statute—even if we could discern them (the Majority Opinion offers no evidence of them)— likewise have no bearing on the inquiry. The Supreme Court has advised us on more than one occasion that when the statutory language is clear, it does not matter what the legislature had in mind when it enacted the law. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). So all that matters to whether a mere touch that accidentally results in serious bodily injury will be prosecuted under the felony-battery law is whether the statutory language allows

---

[10] Nevertheless, a Westlaw search of the Florida caselaw database for "'felony battery' & 784.041" and a review of all notes of reported decisions under West's Fla. Stat. Ann. § 784.041, where the basis for prosecution under the felony-battery statute was disclosed, did not reveal a single reported case of felony battery that did not involve striking, other than the two cited in the Majority Opinion (the third case the Majority Opinion cited, *Lewis v. State*, 817 So. 2d 933, 934 (Fla. 4th Dist. Ct. App. 2002), involved striking (punching), not mere touching). *See* Maj. Op. at 26. In my view, two reported opinions is not a sufficient sample size to conclude that no one has ever been convicted of felony battery for mere-touching conduct. And even if it were, as noted above, mere touching that accidentally results in grievous bodily injury falls squarely within the language of the crime that § 784.041(1) makes criminal. That requires us to account for it.

for it (it does) and whether the prosecuting authority at that time decides to exercise her discretion to charge it.

**2.**

The Majority Opinion alternatively suggests that Florida courts have held that felony battery may not be committed by mere touch. It relies on the opinions of two Florida intermediate-appellate courts that have held that felony battery is a violent crime under Florida law because one of its elements requires serious bodily injury. *See*, *e.g.*, *Dominguez v. State*, 98 So. 3d 198, 200 (Fla. 2d Dist. Ct. App. 2012); *see also Brooks v. State*, 93 So. 3d 402, 403 (Fla. 2d Dist. Ct. App. 2012); *State v. Williams*, 9 So. 3d 658, 660 (Fla. 4th Dist. Ct. App. 2009). But these opinions do not purport to analyze the first element of felony battery. And only one of these opinions even mentions the binding *Hearns* opinion, 961 So. 2d 211, while none explains how it may be harmonized with *Hearns*.

In *Hearns*, Florida's Supreme Court considered the meaning under Florida law of the element of simple battery[11] that requires a person to have "[a]ctually and intentionally touche[d] or str[uck] another person against the will of the other," Fla. Stat. § 784.03(1). It explained that "any intentional touching, no matter how slight"—even "only nominal contact"—satisfies this element of simple battery. *Id.*

---

[11] It did so in the context of evaluating whether the separate offense of battery on a law-enforcement officer, which entails simple battery knowingly committed on a law-enforcement officer, necessarily qualifies as a forcible felony under Florida's violent-career criminal statute, Fla. Stat. § 775.084(1)(d), and Florida's prisoner-releasee-reoffender statute, Fla. Stat. § 775.082.

at 218-19.  Taking pains to make its position clear, the court noted that simply "tapping a law enforcement officer on the shoulder without consent" or "[a] child['s] shooting [of] a spitball at a school police officer"—acts that it described as "minor infractions"—likewise fulfills this element.  *Id.* at 219.

Then, based on the Florida Supreme Court's description of the meaning of this element, the United States Supreme Court determined that, when committed by mere touch, the crime of simple battery could not qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i) because it did not involve "physical force." *Curtis Johnson*, 559 U.S. at 1269-74.

This element of simple battery—the "[a]ctual[] and intentional[] touch[ing] or strik[ing] [of] another person against the will of the other"—is, as noted earlier in this dissent, precisely the same as the first element of felony battery.  *Compare* Fla. Stat. § 784.03(1)(a) *with* Fla. Stat. § 784.041(1)(a).  Yet two of Florida's intermediate appellate courts endowed this element with a different meaning.  And they did so without even addressing the element.

Florida's Fourth District Court of Appeal ("DCA") was the first court to conclude that felony battery under Fla. Stat. § 784.041 "cannot be committed without the use or threat of physical force or violence," under Florida's prison-releasee-reoffender sentencing provision.  *Williams*, 9 So. 3d at 660 (citation and internal quotation marks omitted).  But it did so without any explanation beyond

63

the observation that felony battery "*requires* great bodily harm, permanent disability, or permanent disfigurement." *Id.* That, of course, is nothing more than a recognition of the contents of the second element of felony battery. Nothing in the court's analysis addressed the first element of felony battery at all. In fact, the court's analysis did not account for *Hearns*, for *Hearns*'s analysis of the first element to include mere touching, or for the fact that mere touching alone can result in "great bodily harm, permanent disability, or permanent disfigurement." It didn't even cite *Hearns*.

Then Florida's Second DCA tackled the question in *Brooks*, 93 So. 3d 402. But it simply quoted *Williams* to reach the same conclusion as the Second DCA. *Id.* at 403. And while it did include a citation to *Hearns*, the Fourth DCA's parenthetical description of that case suggests that the court may have determined that felony battery "cannot be committed without the use or threat of physical force or violence" because it may have mistakenly believed that felony battery requires "*intentionally* causing bodily harm." *See Brooks*, 93 So. 3d at 403 (emphasis added). As I have discussed, however, Florida law has been very clear in holding that felony battery contains no such requirement. *See Jefferies*, 849 So. 2d at 404 ("Felony battery is . . . a species of the specific intent crime of battery . . . but with resulting and *unintended* great bodily harm." (emphasis in original)). And under the Supreme Court's "use" trilogy of cases, at least under federal law, an element

64

requiring an intent to cause bodily harm, coupled with an intentional touching for the purpose of doing so, is very different from an element requiring only a mere touching that is not intended to inflict bodily injury.

Florida's Second DCA next discussed the issue in dicta in *Dominguez*, 98 So. 3d 198. Like the *Williams* Court, it did not cite *Hearns* and instead simply offered the same conclusory statement as *Brooks* and *Williams*: "[F]elony battery under section 784.041—which requires that the defendant cause great bodily harm, permanent disability, or permanent disfigurement to the victim— . . . cannot be committed without the use of physical force or violence." *Id.* at 200.

### a.

Despite my deep respect for the Florida intermediate courts of appeal, I cannot help but notice that these cases do not account for the fact that *Hearns* held that the exact same element as is the first element of felony battery—the "[a]ctual[] and [intentional[] touch[ing] or strik[ing] [of] another person against the will of the other"—can be committed by mere touch and does not require the use of any type of violent force. This seems to me to be a fatal flaw in these cases.

I am fully aware that where no state supreme-court case is on point, generally, federal courts must follow the decision of an intermediate appellate state court when it comes to matters of state law. *See Benante v. Allstate Ins. Co.*, 477

65

F.2d 553, 554 (5th Cir. 1973).[12]  But that rule is not absolute.  Rather, when "other persuasive indications [exist] that the highest court of the state would decide otherwise," *id.*, we are obligated to heed them.

Here, Florida's highest court has analyzed the meaning of "[a]ctually and intentionally touch[ing] or strik[ing] another person against the will of the other," and it has expressly concluded that that language includes mere touching.  *See Hearns*, 961 So. 2d at 218-19.  I find that quite the "persuasive indication[]" that Florida's Supreme Court would reach a conclusion about whether the first element of felony battery may be committed by mere touch, different from the intermediate courts of appeal.  This is particularly the case since the intermediate courts of appeal's decisions do not recognize that Florida's Supreme Court has expressly held that the same words at issue here include mere touching, and those courts do not explain why those very same words should be construed differently in the case of felony battery.

## b.

And if we view the decisions of the intermediate courts of appeal as resting on only the second element of felony battery—a sensible reading since the cases do not address the first element at all—the cases run head-on into the *Leocal*/*Castleman*/*Voisine* trilogy.  As the Supreme Court has noted, "[t]he

---

[12] Fifth Circuit cases issued before October 1, 1981, are binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-1210 (11th Cir. 1981).

meaning of 'physical force' in [federal law] is a question of federal law, not state law." *Curtis Johnson*, 559 U.S. at 138. So, of course, is the meaning of "use" of physical force as that term exists in the federal definition of "crime of violence." The intermediate courts of appeal here relied exclusively on the second element of felony battery as written to conclude that felony battery satisfies *Florida*'s definition of "physical force." *See*, *e.g.*, *Williams*, 9 So. 3d at 660. But as discussed earlier in this dissent, the *Leocal*/*Castleman*/*Voisine* trilogy requires the conclusion that, under federal law, the second element of felony battery does not involve the "use . . . of physical force" because felony battery has no intent requirement. For this reason, the decisions of Florida's intermediate courts of appeal cannot justify the conclusion that felony battery necessarily and always requires the "use . . . of physical force" under federal law, even when committed by mere touch that accidentally results in grievous bodily injury.

## III.    Conclusion

The Supreme Court has provided clear guidance to allow us to determine whether Florida felony battery qualifies as a "crime of violence" under § 2L1.2. We must follow that guidance. When we do, it is clear that Florida felony battery does not satisfy the federal definition of "crime of violence." I therefore dissent.

67